CASE NO. 21-cv-133-JFH-KW

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MARK SCHOGGINS, Personal
Representative of the Estate of
MARK ANSON SCHOGGINS,

Plaintiff,

v.

STATE OF OKLAHOMA, *es rel.*
OKLAHOMA HIGHWAY PATROL,
CITY OF MCALESTER, an
OKLAHOMA municipality,
GARRET GRAY, individually
and JAMES MCKEE, individually,

Defendants.

DEFENDANTS OHP, GARRET GRAY AND JAMES MCKEE'S
MOTION FOR SUMMARY JUDGEMENT

KEVIN L. MCCLLURE, OBA#12767
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921   Facsimile: (405) 521-4518

*Attorney for Defendants OHP, Gray and McKee*

December 12, 2022

## TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................................i

TABLE OF AUTHORITIES ..........................................................................ii

DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT .......................1

STATEMENT OF THE CASE .........................................................................1

UNDISPUTED MATERIAL FACTS ..............................................................3

ARGUMENT AND AUTHORITIES................................................................3

PROPOSITION I:

    THIS COURT MUST GRANT GRAY AND MCKEE SUMMARY
    JUDGEMENT/QUALIFIED IMMUNITY ...............................................8

    QUALIFIED IMMUNITY .........................................................................9

    SEIZURE UNDER THE FOURTH AMENDMENT.................................12

    EXCESSIVE FORCE UNDER THE FOURTH AMENDMENT .............13

PROPOSITION II:

    DEFENDANT STATE (OHP) MUST BE GRANTED SUMMARY
    JUDGEMENT.............................................................................................19

    THE OGTCA & EXEMPTIONS FROM LIABILITY.............................21

    NEGLIGENT HIRING, SUPERVISING AND/OR TRAINING .............22

    THERE IS NO STATE TORT LAW DUTY OWED TO A FLEETING
    MOTORIST ...............................................................................................24

CONCLUSION ..............................................................................................24

CERTIFICATE OF SERVICE ......................................................................26

# TABLE OF AUTHORITIES

## CASES

*Adams v. Williams*,
  407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) ...........................................12

*Anderson v. Creighton*,
  483 U.S. 635, 640 (1987) .........................................................................................11

*Apodaca v. City of Albuquerque*,
  443 F.3d 1286, 1289 (10th Cir. 2006........................................................................13

*Arizonans for Official English v. Arizona*,
  520 U.S. 43, 68-69, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1977) .....................................20

*Ashcroft v. al-Kidd*,
  563 U.S. 731, 743, 131 S. Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011) ...................9, 11

*Brower v. County of Inyo*,
  489 U.S. 593, 596, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) .................................12, 14

*Bruning v. Pixler*,
  949 F.2d 855, 860 (10th Cir. 1991) ..........................................................................10

*Bryan v. MacPherson.*,
  630 F.3d 1183, 1192 (10th Cir. 2010) .......................................................................15

*Carabajal v. City of Cheyenne, WY*,
  847 F.3d 1203, 1207 (10th Cir. 2017) .......................................................................14

*Carr v. Castle*,
  337 F.3d 1221, 1231 (10th Cir. 2003) .......................................................................24

*City of Escondido v. Emmons*,
  586 U.S. _____, 139 S.Ct. 500, 503 (2019) ...............................................................16

*City of Los Angeles v. Heller,*
  475 U.S. 796 (1986) ....................................................................................24

*Cortez v. McCauley,*
  478 F.3d 1108, 1120 (10th Cir. 2007) .......................................................12

*Cordova v. Aragon,*
  569 F.3d 1183, 1192 (10th Cir. 2009) .......................................................15

*Devenpeck v. Alford,*
  543 U.S. 146, 153, S. Ct. 543, 116 L.Ed.2d 589 (1991) ...........................13

*District of Columbia v. Wesby,*
  583 U.S. _____ (2018) ...............................................................................11

*Estate of Larsen, ex rel. Sturdivan v. Murr,*
  511 F.3d 1255, 1260 (10th Cir. 2008) .................................................15, 19

*Fisher v. City of Las Cruces,*
  584 F.3d 888, 893 (10th Cir. 2009) ...........................................................14

*Fogarty v. Gallegos,*
  523 F.3d 1147, 1156 (10th Cir. 2008) .......................................................13

*Gonzales v. Duran,*
  590 F.3d 855, 860 (10th Cir. 2009) ...........................................................10

*Graham v. Conner,*
  490 U.S. 386, 395, 396, 397 (1989) ..........................................12, 14, 15, 18

*Gregorich v. Lund,*
  54 F.3d 410, 415 (7th Cir. 1994) ...............................................................11

*Gutierrez v. Cobos,*
  841 F.3d 895, 900 (10th Cir. 2016) ...........................................................11

*Harlow v. Fitzgerald,*
    457 U.S. 800, 818 (1982) ...................................................................................10

*Hinton v. City of Elwood, Kan,*
    997 F.2d 774, 782 (10th Cir. 2006) ......................................................................22

*Hunter v. Bryant,*
    502 U.S. 244, 227, 112 S. Ct. 534, 116 L.Ed.2d 589 (1991) ...............................13

*J.V. v. Albuquerque Public Schs.,*
    813 F.3d 1289, 1296 (10th Cir. 2015 .....................................................................9

*Jordan v. Cates,*
    1997 OK 9, 935 P.2d 289 ...............................................................................21, 23

*Kerns v. Bader,*
    663 F.3d 1173, 1188 (10th Cir. 2008) ..................................................................12

*Keith v. Koerner,*
    843 F.3d 833, 838-839 (10th Cir. 2016) ...............................................................23

*Kingsley v. Hendrickson,*
    576 U.S. 389, 399, 135 S. Ct. 2466, 2474 (2015) ..........................................10, 14

*Kisela v. Hughes,*
    584 U.S. _____, 138 S. Ct. 1148, 1153 ................................................................16

*Lapides v. Board of Regents,*
    535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002) ......................................20

*Livsey v. Salt Lake County,*
    5275 F.3d 952, 958 (10th Cir. (2001) ...................................................................23

*Medina v. Cram,*
    252 F.3d 1124, 1128 (10th Cir. 2011) ..................................................................10

*Messerschmidt v. Millender,*
   132 S.Ct. at 1244 (2012) ...............................................................................13

*Mitchell v. Forsyth,*
   472 U.S. 511, 526 (1985) ...............................................................................10

*Oklahoma Agr. And Mechanical College v. Willis,*
   1898 OK 15, 52 P. 921 ...................................................................................21

*Pahls v. Thomas,*
   718 F.3d 1210, 1233 (2013) ...........................................................................10

*Pauly v. White,*
   874 F.3d 1197, 1215 – 1216 (10th Cir. 2017) ...............................................15

*Pearson v. Callahan,*
   555 U.S. 233, 232 (2009) ...........................................................................10, 11

*Plumhoff v. Rickard,*
   572 U.s. 765, 775-776, 134 S. Ct. 2012 (2014) ..............................16, 17, 20

*Quinn v. Young,*
   780 F.3d 998, 1006 (10th Cir. 2015) ..............................................................12

*Schall v. Martin,*
   476 U.S. 253 (1984) ........................................................................................12

*Scott v. Harris,*
   550 U.S. 372, 378, 379, 380, 386 (2007) ....................................9, 14, 16, 17

*Silva-Martinez v. Florida DOC,*
   808 Fed Appx. 846 (2020) ................................................................................3

*Smith v. City of Stillwater,*
   2014 Ok 42, 328 P.3d 1192 ...........................................................................24

*Stack v. McCotter,*
   Case No. 02-4157, 2003 WL 22422416, *8 (10th Cir. Oct 23, 2003) under Fed. R.Evid.201...3

*Stidham v. Peace Officers Standards & Training,*
   265 F.3d 1144, 1156 (10th Cir. 2003) ........................................................................20

*Stonecipher v. Valles,*
   759 F.3d 1134 (10th Cir. 2014) ................................................................................12

*Tennessee v. Garner,*
   471 U.S. 1, 7, 8-9, 11 (1985) ............................................................................14, 19

*Vanderpool v. State,*
   1983 OK 83, 673 P.2d 1153 ......................................................................................21

*Walker v. City of Orem,*
   451 F.3d 1139, 1152 (10th Cir. 2006 .......................................................................23

*White v. Pauly,*
   137 S.Ct. 548, 552 (2017) .........................................................................................11

*Whitley v. Albers,*
   475 U.S. 312 (1986) ..................................................................................................12

*Will v. Michigan State Police,*
   491 U.S. 58, 109 S. Ct. 2304, 105 L.Ed.2d 45 (1989) ..............................................20

*Wright v. Experian Info Sols., Inc.,*
   805 F.3d 1239 (10th Cir. 2015) ..................................................................................9

## STATUTES

21 O.S. § 540 A (B)........................................................................................................13, 17
21 O.S. § 643 ..............................................................................................................23, 24
42 U.S.C. § 1983...............................................................................................2, 9, 11, 19, 20
47 O.S. § 11-801 ...................................................................................................................13
47 O.S. § 11-901 ...................................................................................................................13
51 O.S. § 151 et seq..............................................................................................................2
51 O.S. (2014) § 152 (14) ....................................................................................................21
51 O.S. (1984) § 152.1 .........................................................................................................21
51 O.S. § 153 B.....................................................................................................................21
51 O.S. § 154.........................................................................................................................21
51 O.S. § 155 (4), (5), (6-23), (30) .................................................................................20, 22
57 O.S. § 571 (zz)............................................................................................................13, 17

## RULES

Fed. R. Civ. P. 56..................................................................................................................1
Fed. R. Evid. 201..................................................................................................................3

## **Exhibits**

| | |
|---|---|
| Exhibit 1 | Deposition of Plaintiff Mark Christopher Schoggins father of the deceased Mark Anson Schoggins ("Schoggins"), taken July 11, 2022 |
| Exhibit 2 | OSCN Docket Sheet, Muskogee County, CF-2014-139 |
| Exhibit 3 County, | CRIMNAL INFORMATION filed September 14, 2018, in Pittsburg |
| | OSCN CF-2018-366; Schoggins "Hit and Run" and "Leaving the Scene of an Accident" which caused his Muskogee Suspended Sentence to be Revoked |
| Exhibit 4 | APPLICATION TO REVOKE SUSPENDED SENTENCE filed in Muskogee County, CF-2014-139 filed October 12, 2018 |
| Exhibit 5 | COMMITMENT RELEASE Muskogee County filed June 20, 2019 |
| Exhibit 6 | OHP SUMMARY REPORT, bates # 38-39 |
| Exhibit 7 | SUMMARY OF TROOPER GARRETT GRAY INTERVIEW, bates # 43-45 |
| Exhibit 8 | SUMMARY OF TROOPER JAMES MCKEE INTERVIEW, bates # 53-55 |
| | SUMMARY OF TROOPER BRAD WILSON INTERVIEW, bates # 64-65 |
| Exhibit 9 | Bates # 262 – Video – Inside Alamo Liquor Store McAlester, Oklahoma |
| | Bates # 264 – Video – Outside Alamo Liquor Store McAlester, Oklahoma |
| | Bate # 267 – Video – James McKee OHP badge 360 |
| | Bates # 268 – Video – Keith Robertson OHP badge 365 |
| | Bates # 269 – Video – Garrett Gray OHP badge 503 |
| | Bates # 269A – Video – Brad Wilson OHP badge 603 |
| | Bates # 270 – Video – McAlester Police |
| | Bates # 271 – Video – McAlester Police |
| | Bates # 272 – Video – McAlester Police |

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARK SCHOGGINS, Personal | ) | |
| Representative of the Estate of | ) | |
| MARK ANSON SCHOGGINS, | ) | |
| Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | CASE NO. 21-cv-133-JFH-KW |
| | ) | |
| STATE OF OKLAHOMA, *ex rel.*, | ) | |
| OKLAHOMA HIGHWAY PATROL, | ) | |
| CITY OF MCALESTER, an | ) | |
| OKLAHOMA municipality, | ) | |
| GARRET GRAY, individually | ) | |
| and JAMES MCKEE, individually, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANTS OHP, GARRET GRAY AND JAMES MCKEE'S
## MOTION FOR SUMMARY JUDGMENT

COMES NOW, the State of Oklahoma, *ex rel*, Oklahoma Highway Patrol (OHP), Garret Gray (Gray), and James McKee (McKee), collectively the "State Defendants", to file this Motion for Summary Judgment pursuant to FRCP Rule 56. In support of this motion, the State Defendants would show this Court the following:

### STATEMENT OF THE CASE

Plaintiff filed this lawsuit on April 8, 2021, as the personal representative of his son's estate. [Doc. 2-1, ¶1]. He alleges that his son was accused of stealing a bottle of liquor in McAlester, Oklahoma on July 17, 2019. [Doc. 2-1, ¶ 6]. McAlester P.D. attempted to stop him, but his son refused to stop, driving recklessly at a high rate of speed. [Doc. 2-1, ¶ 6]. OHP troopers joined the pursuit where they used a Tactical Vehicle Intervention (TVI) to

1

stop him. [Doc. 2-1, ¶ 6]. While Plaintiff alleges that his son's vehicle was barely moving and not posing a threat to anyone [Doc. 2-1, ¶ 6], multiple videos of the incident clearly show Plaintiff's son driving more than 100 mph; driving into on-coming traffic on a US Highway; refusing to obey OHP commands to stop after being forced off the road by a second TVI; and then driving directly toward an OHP trooper. The troopers, in fear for their lives and the lives of public if he were allowed to continue to drive away, opened fire hitting Plaintiff's son, who then drove to the end of a residential street where he crashed into a yard. The officers on scene extracted Plaintiff's son who had been injured from gunfire and began to provide medical aid. He was taken to the hospital where he eventually died.

Plaintiff has sued OHP, the City of McAlester, as well as OHP troopers Garret Gray and James McKee in their *individual capacities*. [Doc. 2-1]. The removed State Petition alleges OHP is liable under the OGTCA [51 O.S. § 151 *et seq.*] because their officers "shot and killed the deceased." [Doc. 2-1, ¶ 3]. Plaintiff claims Gray and McKee are *individually* liable pursuant to 42 U.S.C. § 1983 for their alleged excessive force in seizing his son in violation of the Fourth Amendment. [Doc. 2-1, ¶ 5 & ¶ 7]. Finally, Plaintiff alleges that "the State of Oklahoma failed to properly train their officers in the use of force and arrest procedures. That the failure to train and resulting actions violated the Constitutional rights of the Deceased causing an illegal seizure and excessive force thereby resulting in the loss" of his son's life. [Doc. 2-1, ¶ 8].

## UNDISPUTED MATERIAL FACTS

1.  Mark Anson Schoggins was the son of the Plaintiff, Mark Christopher Schoggins. (Ex. 1- Deposition, p. 5, ln. 21-25; p. 6, ln. 1).

2.  The deceased, Mark Anson Schoggins (hereinafter Schoggins), was no stranger to the law. (Ex. 1, p. 11, ln. 20-23 - Schoggins has been arrested several times).

3.  In 2002, he was arrested for operating a motor vehicle in an unreasonable manner. (Ex. 1, p. 12, ln. 8-11; OSCN, Pittsburg Co., TR-2002-4357).[1]

4.  In 2008, Schoggins was arrested for driving under the influence of alcohol. That would be the first of several such arrests. (Ex. 1, p. 13, ln. 11-23; OSCN, Pittsburg Co., CM-2008-521).

5.  In 2009, he was arrested for obstruction of a law officer and public intoxication (Ex. 1, p. 15, ln. 10-24; OSCN, Pittsburg Co., CM-2009-1021); and arrested for larceny for merchandise from a retailer.  (Ex. 1, p. 17, ln. 12-20; OSCN, Pittsburg Co., CM-2009-1243).

6.  In 2010, he was arrested for public intoxication. (Ex. 1, p. 18, ln. 1-7; OSCN, Pittsburg Co., CM-2010-1064).

7.  In 2013, he was arrested for criminal felony, larceny of merchandise from a retailer. (Ex. 1, p. 19, ln. 10-13; OSCN, Pittsburg Co., CF-2013-325).

---

[1] This Court can take judicial notice of official state records. Official state court records in a related proceeding are subject to judicial notice. *Silva-Martinez v. Florida DOC*, 808 Fed.Appx. 846 (2020)(Court did not abuse its discretion by taking judicial notice of the electronic state court records); *Stack v. McCotter*, Case No. 02–4157, 2003 WL 22422416, *8 (10th Cir. Oct. 23, 2003) (unpublished opinion) (concluding a state district court's docket

8.      In 2014, he had two arrests; one for criminal misdemeanor, driving without a driver's license and failure to pay taxes, and the other arrest was for criminal felony failure to pay child support. (Ex. 1, p. 19, ln. 19-25; p. 20, ln. 3-16; OSCN, Pittsburg Co., CM-2014-139; CF-2014-703).

9.      Also, in 2014 he was arrested in Muskogee County for felony uttering a forged instrument, knowingly concealing stolen property, child endangerment by driving under the influence, eluding, and attempting to elude a police officer, DUI, Unlawful possession of drug paraphernalia, and open container. (Ex. 1, p. 22, ln. 13-25; OSCN, Muskogee Co., CF-2014-139).

10.    From that 2014, arrest in Muskogee County, Schoggins pled guilty, was placed on probation, and was given a suspended sentence. (Ex. 2, [OSCN Muskogee County - CF-2014-139]).

11.    In 2018, he was arrested again for criminal felony, driving a motor vehicle while under the influence of alcohol, and leaving the scene of an accident. (Ex. 1, p. 21, ln. 22-25; Ex. 3 - Criminal Information; Pittsburg County OSCN CF-2018-366 docketed 9-14-2018).

12.    On October 12, 2018, the Muskogee County District Attorney (after receiving information about Schoggins' Pittsburg County felony arrest) filed an Application to Revoke his Suspended Sentence for his 2014 Muskogee County Plea Agreement. (Ex. 4 - Application to Revoke Suspended Sentence).

---

sheet is an official court record subject to judicial notice under Fed. R. Evid. 201).

13.    A Bench Warrant was issued on October 12, 2018 (OSCN CF-2014-139 docket entry 10-12- 2018) and Returned June 20, 2019. (Ex. 5 - COMMITMENT- requiring him to be taken into custody).

14.    Schoggins was apparently released from custody and his revocation hearing was continued to **July 29, 2019**. Ex. 2(OSCN – Muskogee County CF-2014-139 docket entry 7-8-2019).

15.    While apparently out on bond and waiting for his Revocation Hearing in Muskogee County, Schoggins chose to endanger his own life, the general publics' lives, and several law enforcement lives by stealing a bottle of alcohol, drinking it while driving, and recklessly eluding law enforcement in and around McAlester, Oklahoma. (Ex. 6, Bates # 38; Ex. 7, Bates #43; Ex. 8, Bates #53; Ex. 9 videos # 264, 262, 270, 271, 272, 268, 269, 269a).

16.    On **July 17, 2019** at 6:49 PM, while facing the very real prospect of having his probation revoked and serving several years in prison, Schoggins entered the Alamo Liquor Store, in McAlester, Oklahoma, and stole a bottle of liquor. (Ex. 4, Bates # 38; video Bates # 264- Schoggins pulls up to the Alamo Liquor Store in a dark red Ford SUV; he enters the store and then leaves with a bottle of alcohol; Ex. 9 video Bates # 262 - Schoggins takes the bottle from inside the store without paying for it).

17.    The Liquor Store clerks chased Schoggins outside and then called the McAlester Police to report the crime.  (Ex. 9, Bates # 264).

18.    McAlester P.D. then began the pursuit of Schoggins who was observed drinking the

5

alcohol, driving at a high rate of speed, and refusing to stop. (Ex. 9, Bates # 270, 271, 273 – Schoggins' speed exceeded over 100 mph and he forced several vehicles off the road).

19.   McAlester P.D. then requested the Oklahoma Highway Patrol to assist in pursuing Schoggins. (Ex 9, bates # 265, 266, 267, 268, 269, 269a).

20.   Troopers Gray, McKee, Wilson, and Robertson all joined the pursuit of Schoggins. All four troopers' actions were captured on their vehicle dash cameras. (Ex. 9, Gray's camera Bates #269; McKee's camera Bates # 265, 266, 267(wide view); Wilson's camera Bates # 269a; Robertson's camera Bates # 268).

21.   Trooper McKee's camera showed the most complete timeline of events and proves Gray and McKee's actions were reasonable and did not violate Schoggins' state or federal rights:

*Timestamps²* - from McKee's camera vehicle – Ex. 9, Bates #267(wide view):

0:04:22    McKee enters his vehicle. (*see also* Bates # 269a, Wilson's camera 0:01:42; Bates # 269, Gray's camera 0:04:30; Bates # 268, Robertson's camera 0:00:52).

0:04:41    McKee drives south on US69 outside of the City of McAlester, Pittsburg County, Oklahoma. (Bates # 269a, Wilson's camera 0:02:17; Bates # 269, Gray's camera 0:05:23; Bates # 268, Robertson's camera 0:01:36).

0:06:26    Just as McKee catches up to the pursuit he has to pull over to the side of the highway as Schoggins speeds towards him, straight into oncoming traffic, headed the wrong direction on US69; McKee makes a U-turn and joins the pursuit that is now traveling northbound on

_____

² *Timestamp* recordings are measured from when the camera is activated, not an actual AM/PM clock time.

US69 back toward McAlester. Schoggins almost collides head-on into the troopers' vehicles and several other citizens vehicles while driving into oncoming traffic. (Bates # 269a, Wilson's camera 0:03:54; Bates # 269, Gray's camera 0:06:38; Bates # 268, Robertson's camera 0:03:06).

0:07:25   McKee, seeing an opportunity to end the pursuit, attempts a TVI maneuver in order to stop Schoggins from continuing to endanger the public; after contact, Schoggins' vehicle swerves but he regains control; McKee swerves but he also managed to regain control; McKee continues his pursuit. (Bates # 269a, Wilson's camera 0:04:55; Bates # 269, Gray's camera 0:07:37).

0:08:12   McKee follows the pursuit as Schoggins exits US69 onto Business US69, which is a two-lane highway heading into the city of McAlester. (Bates # 269a, Wilson's camera 0:06:06; Bates # 269, Gray's camera 0:08:17; Bates # 268, Robertson's camera 0:04:24).

0:09:22   McKee turns right onto East South Street into a McAlester neighborhood; Wilson is immediately in front of him; up ahead McKee sees Gray TVI Schoggins' vehicle which spins into a yard on the left and comes to a stop; Gray comes to a stop across the street to the right; Schoggins regains control of his vehicle, drives back onto the street in an attempt to continue his escape, still refusing to stop. (Bates # 269a, Wilson's camera 0:06:47; Bates # 269, Gray's camera 0:09:25; Bates # 268, Robertson's camera 0:05:38).

0:09:32   McKee observes Gray place his vehicle in reverse in order to block Schoggins from continuing to flee; Schoggins rams his vehicle into Gray's patrol car, knocking off Gray's bumper and Schoggins is forced into a driveway to the left where he crashes into a citizen's parked vehicle. (Bates # 269a, Wilson's camera 0:06:57; Bates # 269, Gray's camera 0:09:37; Bates # 268, Robertson's camera 0:05:45).

0:09:36   McKee parks his vehicle behind Gray's now damaged patrol car; Gray exits his vehicle and draws his weapon; Schoggins places his vehicle in reverse and backs onto the street ramming into Wilson's parked vehicle; Wilson runs up to Schoggins vehicle, draws his weapon and opens Schoggins' driver's side door yelling for Schoggins to stop and exit his vehicle; McKee exits his vehicle, runs in front of Gray's damaged patrol car and pulls his weapon. (Bates # 269a, Wilson's camera 0:07:02; Bates # 269, Gray's camera 0:09:48; Bates # 268, Robertson's camera 0:05:48).

7

0:09:40        Instead of complying with Wilson's commands, to stop and exit his vehicle, Schoggins accelerates forward, driving toward Gray who is outside of his vehicle and now in front of Schoggins' vehicle with his weapon drawn; McKee has his weapon drawn and is on the right front side of Schoggins' vehicle. (Bates # 269a, Wilson's camera 0:07:08; Bates # 269, Gray's camera 0:09:55; Bates # 268. Robertson's camera 0:09:50).

0:09:43        As Schoggins accelerates toward Gray; Gray fires several shots into the cab of Schoggins' vehicle, before jumping out of the way; McKee also fires into Schoggins' vehicle; Trooper Wilson is struck by a bullet in the cross-fire; Schoggins is also hit.   (Bates # 269a, Wilson's camera 0:07:15; Bates # 269, Gray's camera 0:09:55; Bates # 268, Robertson's camera 0:06:20).

0:09:50        Schoggins' vehicle proceeds down the residential street, past an intersection and crashes into a yard. (Bates # 269a, Wilson's camera 0:07:19; Bates # 269, Gray's camera 0:10:00; Bates # 268, Robertson's camera 0:06:25).

22.    Law Enforcement officers render medical aid to Schoggins, but he later dies from his injuries. (Ex. 6, Bates # 39).

23.    The pursuit lasts less than 7 minutes. Gray's and McKee's uses of force were both reasonable and justified as they feared for their lives, the lives of their fellow officers, and the general public's lives if Schoggins were allowed to continue to drive away. (Ex. 9 – videos; Ex. 6, 7 and 8). They did not violate Schoggon's constitutional rights and there was no clearly established law alerting them that their actions would be unconstitutional. (Ex 9).

**PROPOSITION I:**        **THIS COURT MUST GRANT GRAY AND MCKEE SUMMARY JUDGMENT/QUALIFIED IMMUNITY**

Summary judgment is appropriate if "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) F.R.Cv.P. An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim. *J.V. v. Albuquerque Public Schs.*, 813 F.3d 1289, 1296 (10th Cir. 2016). When applying this standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *Wright v. Experian Info. Sols., Inc.,* 805 F.3d 1232, 1239 (10th Cir. 2015). But where there is undisputed video of the incident, a Court should determine for itself the actual facts regardless of what the parties plead or argue. *Scott v. Harris*, 550 U.S. 372, 380 (2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Plaintiff has sued OHP troopers Gray and McKee in their *individual capacities* pursuant to 42 U.S.C. § 1983 for violation of his son's Fourth Amendment rights. [Doc. 2-1, ¶ 3 - "the individual Highway Patrol Troopers are proper defendants for the purpose of the *1983* civil rights action only."; ¶ 5 - "Defendants Gray and McKee by shooting Mark Anson Schoggins until dead violated (the Fourth Amendment) by excessive force while acting under color of law as law officers working [for] the Oklahoma Highway Patrol"].  Both Gray and McKee claim *qualified immunity* and ask this Court to grant them summary judgment.

## QUALIFIED IMMUNITY

Qualified immunity gives government officials breathing room to make reasonable

but mistaken judgments about open legal questions. *Ashcroft v. al–Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011).  Once qualified immunity is asserted, **the burden shifts to the Plaintiff** to overcome that claim by pointing to case law that would have alerted the official that their actions violated clearly established law. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Qualified Immunity is presumed. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Pahls v. Thomas*, 718 F.3d 1210 (2013)(it is the "norm").  To overcome the **presumption** of *qualified immunity* a Plaintiff must:

> *First* - **assert** in their Complaint (Motion Dismiss stage) or **prove** (Summary Judgment stage) that each Defendant has violated a Constitutional right; **and** *Second* - Plaintiff must then assert or prove that the right was "***clearly established***" at the time of the allege violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

However, those two questions are merely the **tools** the Court uses to answer the **ultimate question** which is:

> Would a reasonable official in the position of each Defendant knowing only (1) the *facts* alleged [at dismissal stage] or (2) the *facts* proved [at MSJ stage] that their actions would violate the Plaintiff's Constitutional rights?  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pahls v. Thomas*, 718 F.3d at 1233 ("defendants' entitlement to qualified immunity[] turn[s] on an individual assessment of each defendant's conduct and culpability").

The Supreme Court has "stressed that a court must judge the reasonableness of [an action] from the perspective and with the knowledge of the defendant." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015). As a general matter, the qualified immunity analysis looks to whether an official's conduct was objectively reasonable. *Gonzales v. Duran*, 590 F.3d 855, 860 (10th Cir. 2009).  However, a court may consider "the defendant's intent when his state of mind is an essential element of the plaintiff's substantive claim." *Bruning v.*

10

*Pixler*, 949 F.2d 352, 356 (10th Cir. 1991).  Here, since Plaintiff has sued Gray and McKee for intentionally violating the deceased's rights by using excessive force in his son's seizure, Plaintiff must produce a case (on point) that would have alerted Gray and McKee that their actions (established by the undisputed facts) "intentionally" violated the deceased's Fourth Amendment rights.

"[T]he *clearly established* law must be 'particularized' to the facts of the case" and may not be defined at a high level of generality. *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). It is the plaintiff's burden to produce case law in which "the facts of the existing case law must closely correspond to the contested action before the defendant official is subject to liability." *Gregorich v. Lund*, 54 F.3d 410, 415 (7th Cir. 1994); *District of Columbia v. Wesby*, 137 S.Ct. 826 (2018) (we have stressed **the need to "identify a case** where an officer acting under similar circumstances . . . was held to have violated [federal law]"); *see also, Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016) (internal quotation marks omitted). The failure to identify such a case is fatal to the claim. *Gutierrez*, at 902; *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013). Existing precedent must have placed the constitutional question **beyond debate**. *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2010).  Therefore, qualified immunity protects officials regardless of whether the official's error is a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. at 232.  As a result, only those who are "incompetent" under state negligence law or those who "knowingly violate the law" under 42 U.S.C. § 1983, can be held liable.  *Ashcroft v. al–Kidd*, 563 U.S. at 743(When properly applied it

protects "all but the incompetent or those who knowingly violate the law"). Plaintiff alleges Defendants Gray and McKee have violated his son's Fourth Amendment rights by illegally seizing him and by using ***excessive force***.[3] The seizure of Schoggins was obvious and reasonable from the facts proved on the videos. Schoggins refused to stop, and the troopers' actions were reasonable under the circumstances they faced.

### *Seizure under the Fourth Amendment*

Qualified immunity should be granted to Gray and McKee if there was "arguable probable cause" to seize Schoggins. *Stonecipher v. Valles*, 759 F.3d 1134 (10th Cir. 2014). "Arguable probable cause" is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists. *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir.2007). A Court will "assess probable cause under an objective standard of reasonableness." *Quinn v. Young*, 780 F.3d 998, 1006 (10th Cir. 2015). "'Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction.'" *Id.* at 488 (quoting *Adams v. Williams*, 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)). It "does not require proof beyond reasonable doubt" or "even require the suspect's guilt to be more likely true than false." *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir.2011). "Instead, the relevant question is

---

[3] The Fourth Amendment protects "pre-arrestees" from "excessive force" during their arrest *Graham v. Conner*, 490 U.S. 386 (1989), while the Fourteenth Amendment protects detainees (those arrested but not convicted) *Schall v. Martin*, 467 U.S. 253 (1984) and the Eight Amendment protects prisoners (those convicted) *Whitley v. Albers*, 475 U.S. 312 (1986); *Brower v. County of Inyo*, 489 U.S. 593, 596, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (constitutional violations require "**intentional actions**" by officers, rather than "the accidental effects of otherwise lawful government conduct").

whether a substantial probability existed that the suspect committed the crime, ... requiring something more than a bare suspicion." *Id.* (internal quotation marks omitted). As a result, "it does not matter whether the arrestee was later charged with a crime." *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir.2008).  Furthermore, "[a]n arrest is <u>not</u> **invalid** under the Fourth Amendment simply because the police officer subjectively intended to base the arrest on an offense for which probable cause is lacking, so long as 'the circumstances, viewed objectively, justify' [any other grounds for the] arrest." *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir.2006) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153, S.Ct. 588, 160 L.Ed.2d 537 (2004) (arrest is valid even if based on different crime than charged). Therefore, under the qualified-immunity doctrine, "law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity," (*Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)), because it is the "totality of the circumstances" observed by the officer establishing his probable cause to make an arrest, regardless of whether the arrestee was charged or convicted. *See Messerschmidt v. Millender*, 132 S.Ct. 1235, 1244 (2012).

Troopers Gray and McKee obviously had "probable cause" to stop, TVI, and attempt to seize Schoggins in this case.  Schoggins' reckless driving (47 O.S. § 11-901), speeding (47 O.S. § 11-801), and endangerment of other motorists' lives by driving the wrong direction on a U.S. Highway (21 O.S. § 540A(B); *see also*, 57 O.S. § 571(zz)), provided the troopers with probable cause to stop, TVI, and attempt to seize Schoggins.  Therefore, they must be granted qualified immunity/summary judgment in this case.

*Excessive Force under the Fourth Amendment*

Excessive force cases are particularly fact intensive. *Carabajal v. City of Cheyenne, Wy.*, 847 F.3d 1203, 1207 (10th Cir. 2017)("To assess the constitutionality of the officers' actions, we must first determine the relevant facts.")(citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). Although this Court must view any disputed facts in a light most favorable to the non-moving party, the Supreme Court has emphasized that a district court may not "ignore clear, contrary video evidence in the record depicting the events as they occurred." *Carabajal*, at 1207 (citing *Scott v. Harris*, *supra.*, at 380). Here the video evidence is undisputed.

To prove a claim for excessive force under the Fourth Amendment, a Plaintiff must produce evidence that a "seizure" occurred, and that the seizure was "unreasonable." *v. County of Inyo*, 489 U.S. 593 (1989). The reasonableness of a seizure depends on when and why the seizure was made and how it was accomplished. *Fisher v. City of Las Cruces*, 584 F.3d 888, 893 (10th Cir. 2009)(citing *Graham v. Conner*, 490 U.S. 386, 395 (1989)). The Supreme Court has "stressed that a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Kingsley v. Hendrickson*, 576 U.S. 389, 399, 135 S.Ct. 2466, 2474 (2015); *Graham v. Conner*, 490 U.S. 386, 396 (1989) (Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). It is clearly established that "apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). However, "the 'reasonableness'

inquiry in an excessive force case is an objective one: the question is whether the officers'
actions are 'objectively reasonable' in light of the facts and circumstances confronting them,
without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.  This is a
"totality of the circumstances" analysis. *Garner.* 471 U.S. at 8-9.  When judging the facts and
circumstances of a particular case, a court will consider the three factors outlined by the
Supreme Court in *Graham v. Connor*, 471 U.S. 386 (1986): (1) "the severity of the crime at
issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or
others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by
flight." *Id.* at 396.

　　　"The second *Graham* factor ... is undoubtedly the "most important' and fact intensive
factor in determining the objective reasonableness of an officer's use of force."  *Pauly v.
White*, 874 F.3d 1197, 1215-16 (10th Cir. 2017)(quoting *Bryan v. MacPherson*, 630 F.3d 805,
826 (9th Cir. 2010)).  This is particularly true in a deadly force case, because "deadly force is
justified only if a reasonable officer in the officer's position would have had probable cause
to believe that there was a threat of serious physical harm to himself or others."  *Cordova v.
Aragon*, 569 F.3d 1183, 1192 (10th Cir. 2009).  When evaluating the degree of a threat faced
by an officer, the Tenth Circuit will usually include in its assessment: "(1) whether the
officers ordered the suspect to drop his weapon, and the suspect's compliance with [those]
commands; (2) whether any hostile motions were made with the weapon towards the officer;
(3) the distance separating the officers and the suspect; and (4) the manifest intentions of the
suspect." *Estate of Larsen ex rel., Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008).

Additionally, in assessing whether or not to grant an officer *qualified immunity* for his use of force, the "clearly established law" must be defined in relevant case law with "**specificity**." *City of Escondido v. Emmons*, 586 U.S. ___, 139 S.Ct. 500, 503 (2019).

> "**Specificity** is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the *specific facts* at issue....
> "[I]t does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.*, 139 S.Ct. at 503 (quoting *Kisela v. Hughes*, 584 U.S. ___, 138 S.Ct. 1148, 1153)(emphasis added).

Not only is there no case law that would have alerted Gray and McKee to the fact that their actions from the undisputed facts would violate the Fourth Amendment's prohibition against unreasonable and excessive force, but the relevant case law actually supports their actions. See *Plumhoff v. Rickard*, 572 U.S. 765, 134 S.Ct. 2012 (2014).

In *Plumhoff* (like this case), the Supreme Court was faced with the question of whether the law enforcement officers involved in a high-speed dangerous pursuit and shooting were entitled to qualified immunity. The Court citing *Scott v. Harris*, 550 U.S. at 380, reiterated that when a video of the incident is available, it would judge for itself whether the officers' actions were reasonable or not. *Id.* 572 U.S. at 775 (the video tape established the undisputed facts regardless of what the parties argue). The *Plumhoff* video, in which the Supreme Court determined that there were no 4th Amendment violations by the officers in that case, is

16

almost identical to the multiple videos in this case.[4]  Both involved high-speed pursuits; in both the fleeing motorists were driving recklessly and running other vehicles off the roadway; in both the fleeing drivers refused to stop after Tactical Vehicle Interventions (TVIs) were utilized; and in both the officers used lethal force discharging their weapons to end the dangerous pursuits. *Plumhoff* at 775-76 (again citing *Scott v. Harris*, at 379-380).   In light of those facts, the *Plumhoff* court found "it was quite clear that the police officer did not violate the Fourth Amendment." *Id.* at 776.   "A police officer's attempt to terminate a dangerous high-speed chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *Id.* at 776 (again citing *Scott v. Harris*, at 386).

There is no basis for reaching a different conclusion here. The undisputed video facts clearly prove that Schoggins was driving recklessly endangering the lives of others and the officers involved in the pursuit. That "reckless endangerment" is a felony in Oklahoma. 21 O.S. § 540A(B); *see also*, 57 O.S. § 571(zz). Even after Schoggins was stopped by the TVI (twice), he showed no indication that he intended to obey the officer's commands to stop. (Ex 4, Bates # 265, 268, 269, 269a).  Wilson even opened Schoggins' driver's side door pointed his weapon at him telling him to exit his vehicle; Wilson witnessed Schoggins reach across the passenger seat and take a drink from the bottle of liquor he had just stolen. Without hesitation Schoggins then looked straight at Gray standing in front of his vehicle

---

[4] https://www.youtube.com/watch?v=syaqHJGF_iI (Please disregard the narrative. It is the relevant video that should be compared with the videos in this case where the Supreme Court granted the officers qualified immunity.).

and accelerated his Ford SUV toward him. (Ex. 8, bate # 64-65; Ex 9, Bates # 265, 268, 269, 269a). Therefore, even though Plaintiff has pled his son was only being pursued for the misdemeanor crime of stealing a bottle of liquor [Doc. 2-1 ¶ ], once Schoggins failed to stop for McAlester P.D.; speed off refusing to stop after two TVI attempts with multiple law enforcement agencies in pursuit with their lights and sirens engaged; endangered the lives of other drivers and the officers by speeding while driving on the wrong side of the road into on-coming traffic; proceeded to continue his escape by turning into a residential area; and finally, driving directly at troopers Gray and McKee, those undisputed facts establish that the Officers were conducting a felony arrest. *Graham v. Connor*, 471 U.S. 386 (1986) (factor one "severity of the crime").

After Schoggins' vehicle was successfully TVI[ed] the second time, he spun-out into a residential yard, the officers exited their vehicles and ordered him to stop and exit his vehicle. Troopers Gray and McKee were in front of Schoggins' vehicle (Gray directly in front/McKee to the front right) with their weapons drawn and aimed at Schoggins, when he accelerated toward Gray placing Gray's life in immediate danger, as well as all other members of the public who would have been in his way as he continued to drive intoxicated in a dangerous and reckless manner. *Graham v. Connor*, 471 U.S. 386 (1986)(factor two "poses an immediate threat to the safety of the officers or others").

Finally, Schoggins clearly resisted arrest by failing to stop and exit his vehicle. *Graham v. Connor*, 471 U.S. 386 (1986) (factor three "attempting to evade arrest by flight"). Schoggins' weapon was his five-thousand (5000) pound vehicle; he made hostile motions

18

with that weapon when he drove toward troopers Gray and McKee, after Wilson yelled, almost face to face with him, to stop and exist his vehicle; both troopers Gray and McKee were mere feet in front of Schoggins' vehicle when he accelerated with a clear intent to run over Gray or anyone else who got in his way. Schoggins' "manifest intentions" clearly prove he was attempting to drive over trooper Gray and, if allowed to escape, he would have continued to endanger the public with his reckless driving. *Estate of Larsen ex rel., Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008)(satisfying all four factors discussed by the court in *Estate of Larsen*).

> "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if where feasible, some warning has been given."

*Tennessee v. Garner*, 471 U.S. 1, 11.

Clearly, the undisputed facts established by the numerous videos prove that Schoggins was endangering the public with his reckless driving and continued to do so when he attempted to run over Trooper Gray. Schoggins intended to use deadly force with his vehicle which threatened Trooper Gray with serious physical harm. Any reasonable law enforcement officer in McKee's and Gray's position would have believed the same, Gray's life was endangered, and if allowed to escape, Schoggins would have continued to endanger the life of other members of the public. The "clearly established law" actually supports the officers' actions in this case, and there is no case law that would have alerted either Gray or

McKee that their actions would violate Schoggins' Fourth Amendment rights. See *Plumhoff v. Rickard*, 572 U.S. 765 (2014).  Therefore, this Court must grant troopers Gray and McKee **_qualified immunity_**/summary judgment.

**PROPOSITION II:**          **DEFENDANT STATE (OHP) MUST BE GRANTED SUMMARY JUDGMENT**

It is unclear whether Plaintiff is suing the State/OHP under 42 U.S.C. § 1983 or just under the Oklahoma Governmental Torts Claims Act (OGTCA). If under § 1983, then this Court must grant OHP summary judgment because the State is not "a person" under that statute. *Will v. Michigan State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). *See also*, *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68-69, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)(noting that § 1983 actions do not lie against the state); *Stidham v. Peace Officers Standards & Training*, 265 F.3d 1144, 1156 (10th Cir. 2003)(stating that neither the state nor its officials acting in their official capacities are persons under 42 U.S.C. § 1983); *Lapides v. Board of Regents*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002)(States and their agencies are not "persons" for purposes of 42 U.S.C. § 1983)).  Since the State is not a "person" under § 1983, OHP must be granted summary judgment if Plaintiff is attempting to sue the State under that statute.

Plaintiff also alleges "the State of Oklahoma failed to properly train their officers in the use of force and arrest procedures" alleging "[t]hat the failure to train and the resulting actions violated the Constitutional rights of the Deceased causing an illegal seizure and excessive force thereby resulting in the loss of his life." [Doc. 2-1 ¶ 8]. As a result, Plaintiff claims state law damages pursuant to Oklahoma's Wrong Death statute citing 12 O.S. §

1054(B)(6). [Doc. 2-1 ¶ 9].

However, the State/OHP must be granted summary judgment for Plaintiff's wrongful death claim pursuant to the Oklahoma Governmental Torts Act (OGTCA), because **(1)** the OGTCA provides exemptions for such claims pursuant to 51 O.S. § 155(4), (5), (6), & (30); and **(2)** a State employer cannot be held liable *via **respondeat superior*** for a "negligent hiring, supervising, and/or training claim" when the employer admits their employee was acting ***within the scope of their employment*** because such an allegation is not a separate independent claim in Oklahoma. *Jordan v. Cates*, 1997 OK 9, 935 P.2d 289. In this case OHP admits both Gray and McKee were acting within the scope of their employment in good faith.

### *The OGTCA & Exemptions from Liability*

The State of Oklahoma (like the national government) has retained its sovereign immunity for any and all claims and can only be sued upon consent. *Oklahoma Agr. and Mechanical College v. Willis*, 1898 OK 15, 52 P. 921(The State is not liable, except by its own consent). The State retained its sovereign immunity as a complete defense to any liability until the case of *Vanderpool v. State*, 1983 OK 83, 673 P.2d 1153, where the Oklahoma Supreme Court held that the State can be held liable in the same way as any other citizen, unless the Legislature designates otherwise. Post-*Vanderpool*, the Oklahoma Legislature enacted Oklahoma's Governmental Torts Claims Act (GTCA). 51 O.S. (1984) § 152.1. Through the GTCA, the State has consented to suit, subject to that Act's provisions, conditions, and exemptions. *Id.* Oklahoma's Governmental Torts Claims Act is the

21

*exclusive* means of holding the State or a governmental entity liable in the State of Oklahoma. 51 O.S. § 153(B) (*exclusive remedy* for its' torts).   In 2014, the Oklahoma Legislature amended the OGTCA re-defining when the State can be held liable. 51 O.S. (2014) § 152(14) (defining a "Tort" as any legal wrong involving a duty imposed by general law, statute, or the Constitution of the State of Oklahoma); 51 O.S. § 153(B)(limits liability for Torts and violations of Oklahoma Constitution); 51 O.S. § 154(limits of liability; no punitive damages allowed; liability shall be "several" and only liable for the State's percentage of fault). Therefore, any allegation that OHP or its employees (Gray and/or McKee) have violated the Oklahoma constitution would be covered by the OGTCA.

When the Oklahoma legislature enacted the OGTCA it designated certain situations where the State has not consented to suit. 51 O.S. § 155(exemptions from liability). These "exemptions from liability" numbered 1 through 37, specify the circumstances where the State has reserved and retained its sovereign immunity, *i.e.*, where the State has not consented to be sued.  Among those exemptions are 51 O.S. § 155(4) (failure to enforce or adopt a "written policy"); 51 O.S. § 155(5) (failure to exercise or perform any act which is discretionary); and 51 O.S. § 155(6)(failure to provide or the method of providing police or law enforcement protection).

## Negligent hiring, supervising and/or training

When a State law enforcement officer has not violated the constitution, the State cannot be held liable. *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993)(a law officer's employer "may not be held liable where there was no underlying constitutional

violation by any of its officers."); *see also*, *Walker v. City of Orem*, 451 F.3d 1139, 1152 (10th Cir. 2006)(a plaintiff suing under section 1983 for the actions of its officers must demonstrate that a government employee committed a constitutional violation); *Livsey v. Salt Lake County*, 275 F.3d 952, 958 (10th Cir. 2001)(defendants' actions did not violate constitutional rights and could not have caused the county to be held liable based on their actions). Furthermore, when the State admits that the State employee was acting within the scope of their employment, there is no independent claim against the State/Employer for "negligent hiring, supervising and/or training" because there is no such independent cause of action in Oklahoma. *Jordan v. Cates*, 1997 OK 9, 935 P.2d 289.

Here, both Gray and McKee's actions in pursuit of Schoggins and in their use of force were reasonable (*i.e.,* not negligent), and therefore constitutional. Schoggins left them with no choice but to use deadly force when he drove directly at them. If they had not used the force they did use, Schoggins would have severely injured McKee and continued his reckless endangerment of the public. Therefore, since both Gray and McKee's actions were reasonable and constitutional, the State/OHP cannot be held liable. *See* 21 O.S. §643 (force is not unlawful).

Furthermore, Oklahoma law does not recognize a cause of action against the State for "failing to adopt a policy" [51 O.S. § 155(4), (5), & (6)], and conclusory or generalized failure to train claims are insufficient. *See Keith v. Koerner*, 843 F.3d 833, 838-39 (10th Cir. 2016) ("Its is not enough to allege general deficiencies in a particular training program. Rather, a plaintiff must identify a specific deficiency in the entity's training program closely

23

related to his ultimate injury."): *Carr v. Castle*, 337 F.3d 1221, 1231 (10th Cir. 2003)("Many courts have highlighted the importance of the [requirement that the alleged training deficiency be closely related to the ultimate injury], ruling that a general lack of training is insufficient."); *Angeles v. Heller*, 475 U.S. 796 (1986)("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the department regulations might have authorized the use of constitutionally excessive force is quite beside the point."). Since the undisputed video facts prove that neither Gray nor McKee have violated any of Schoggins' constitutional rights and that their actions were reasonable and justified under the circumstances they were presented, this court must grant OHP/State summary judgment.

### There Is No State Tort Law Duty Owed to a Fleeing Motorist

In *Smith v. City of Stillwater*, 2014 OK 42, 328 P.3d 1192, the Oklahoma Supreme Court was asked to decide whether there is a duty owed to a fleeing motorist, if the motorist is subsequently injured when they are fleeing law enforcement. The Court held that:

> "[e]very motorist in the state of Oklahoma has an affirmative duty to stop their vehicle when directed to do so by a law enforcement officer. By fleeing from law enforcement, it is the suspect who's unlawful and dangerous actions necessitate pursuit in the first place. It would be absurd to conclude that law enforcement officers, out of concern for the safety of a fleeing suspect, must cease pursuit of that individual or risk possible civil liability to the suspect." *Id.* 2014 OK 42 at ¶ 34.

Therefore, since there is no "duty" owed to a fleeing motorist, and both McKee and Gray's actions were both justified (21 O.S. §643) and reasonable, this Court must grant the State summary judgment.

## **CONCLUSION**

The undisputed material facts prove that Schoggins was on a suicide mission --he did not intend to survive. He had just received notice that his suspended sentence in Muskogee County was about to be revoked, and he was going to prison.  His decision to steal a bottle of alcohol and then lead numerous law enforcement officers on a high-speed reckless pursuit, driving the wrong direction on a US highway, running cars off the roadway, and failing to stop for the officers, even after being force to stop (twice by TVIs), proves he was dangerous. The undisputed videos prove that Gray's and McKee's actions were both reasonable and constitutional and there is no "clearly established law" that would have alerted them that their actions would be unreasonable or unconstitutional. Therefore, this court must grant OHP, Gray, and McKee summary judgment.

Respectfully submitted,

 s/ Kevin L. McClure
**KEVIN L. MCCLURE, OBA # 12767**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Section
313 N.E. 21st Street
Oklahoma City, Oklahoma 73105-3498
T: (405) 521-3921  F: (405) 521-4518
Email: Kevin.McClure@oag.ok.gov
*Attorney for Defendants OHP, Gray,*
*and McKee*

## CERTIFICATE OF MAILING

I hereby certify that on this 12th of December, 2022. I sent the foregoing document via electronic mail to the following counsel of record:

Warren Gotcher
GOTCHER AND BEAVER
323 East Carl Albert Parkway
PO Box 160
McAlester, OK 74502
(918) 423-0412
*Attorney for Plaintiff*

Sean Mckelvey
Meaghen E. Clark
Clark W. Crapster
STEIDLEY & NEAL
100 East Carl Albert Parkway
PO Box 1165
McAlester, OK 74501
(918) 423-4611
smm@steidley-neal.com
mac@steidley-neal.com
*Attorneys for the City of McAlester*

Gary J. James
Gary J. James & Assoc., P.C.
PO Box 2443
Oklahoma City, OK 73101
(405) 521-9900
gary@garyjameslaw.com
*Attorney for Defendants Garret Gray and James McKee, in their individual capacity*

 s/Kevin L. McClure
**Kevin L. McClure**

26