IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| 1. MARK SCHOGGINS, PERSONAL REPRESENTATIVE of the ESTATE of MARK ANSON SCHOGGINS, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>1. STATE OF OKLAHOMA, ex rel. OKLAHOMA HIGHWAY PATROL,<br>2. CITY OF McALESTER, OKLAHOMA, a municipality,<br>3. GARRET GRAY, individually,<br>4. JAMES McKEE, individually,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 21-cv-133-JFH |

**DEFENDANT CITY OF McALESTER'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

COMES NOW, Defendant (2) City of McAlester, Oklahoma ("the City"), by and through its attorneys of record, STEIDLEY & NEAL, P.L.L.C., and submits the following Reply in Support of its Motion for Summary Judgment, with supporting brief, pursuant to Fed. R. Civ. P. 56 and in support, shows the Court as follows:

I. **Plaintiff Confesses As to His Claims Under § 1983 and *Bosh*, and the City is Accordingly Entitled to Summary Judgment on Those Claims; There is No Dispute as to Any Material Fact Relating to the City's Request for Summary Judgment**

In his *Response to Motion for Summary Judgement* [sic] *of Defendant City of McAlester, Oklahoma* (ECF Doc. 54) ("Response"), Plaintiff, the personal representative of the estate of Mark Anson Schoggins (hereafter, "Anson"), acknowledges that the City's characterization of his three claims asserted in the Complaint (repeated below) is accurate:

1. A state-law tort claim allegedly resulting from the attempt by the City's police officer, Chuck Sutterfield ("MPD Officer Sutterfield") to make an investigatory traffic stop on Anson.

      2.      A claim under 42 U.S.C. § 1983.

      3.      A *Bosh* claim, under the Oklahoma Constitution.

*See* Response (ECF Doc. 54), p. 1. Plaintiff further states that he has now "abandoned" the second (§ 1983) and third (*Bosh*) claims. *Id.* Accordingly, Plaintiff's statement regarding abandonment and his failure to address the claims in the Response should be deemed a confession of these claims. *See Brown v. K-MAC Enterprises,* 897 F. Supp. 2d 1098, 1109 (N.D. Okla. 2012) (court dismisses claims with prejudice under Fed. R. Civ. P. 12(b)(6) where the plaintiff in her response to a motion to dismiss failed to address defendant's arguments for dismissal); *Khalik v. United Air Lines,* slip op., No. 10-cv-01490-DME-MJW, at *10-*11 (D. Colo. Dec. 7, 2010) (**Exhibit A** hereto), *aff'd,* 671 F.3d 1188 (10th Cir. 2012) (where plaintiff confesses in her response to a motion to dismiss that her complaint fails to state claims for breach of contract or promissory estoppel, the court dismisses such claims with prejudice). Therefore, the City is entitled to summary judgment on Plaintiff's § 1983 and *Bosh* claims.

Additionally, other than positing legal argument as to the significance of some of the City's undisputed facts, Plaintiff does not otherwise contest any of the City's factual contentions. *See* Response (ECF Doc. 54), p. 2. Accordingly, there is no genuine dispute as to any material fact relating to the City's request for summary judgment on Plaintiff's claims.

### III.   The City Is Entitled to Summary Judgment on Plaintiff's Remaining Claim of Negligence[1]

---

[1] If the Court grants the City's request for summary judgment on Plaintiff's federal claims, Plaintiff's state law tort claim will stand as the sole claim against the City. The City acknowledges that the Court must "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988) (citing *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966)). The Court should continue to exercise jurisdiction over Plaintiff's negligence claim against the City because the balance of these factors "would be served by retaining jurisdiction." *See Wittner v. Banner Health,* 720 F.3d 770, 781 (10th Cir. 2013) (federal courts "should consider retaining state claims" when the balance of these factors "would be served by

A.  **The City Has No Liability to Plaintiff for State-Law Negligence Based On Pursuit of Anson Because Oklahoma Law is Clear: The City Owed No Duty to Anson, a Fleeing Suspect**

In his Response, Plaintiff shifts course from the allegations in his Complaint, and he now pins his negligence claim on the theory that MPD Officer Sutterfield's pursuit of Anson violated

---

retaining jurisdiction." (quoting *Anglemyer v. Hamilton Cnty. Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995)). In this case, the parties have filed a joint status report, prepared and served disclosure statements as required by Fed. R. Civ. P. 26(a), exchanged written discovery, taken multiple depositions, designated exhibits and expert witnesses, filed and have had considered multiple discovery motions, and settlement conference and trial dates have been set. Where substantial activity has already occurred at the time the federal claims are terminated, the rationale for the Court to retain supplemental jurisdiction over Plaintiff's negligence claim is compelling. *Anglemyer*, 58 F. 3d at 541 ("A federal court justifiably may retain jurisdiction of the pendent claims when substantial time and energy have been expended on the case prior to the disposition of the federal claims." (internal quotes and citation omitted)); *see also Henderson v. Nat. R.R. Passenger Corp.*, 412 F. App'x 74, 79 (10th Cir. 2011) (the district court did not abuse its discretion by retaining supplemental jurisdiction where the parties had engaged in numerous pre-trial actions, much like those in the present case).

Additionally, even if the Court were to grant summary judgment as to the federal claims against the City, the federal claims and state claims against the State would remain, and all of Plaintiff's claims against both the City and the State arise out of the same nucleus of operative facts. Plaintiff's negligence claim does not raise any novel or complex issues—Oklahoma law on the applicable duty (or rather, lack of duty) and causation for negligence is clear—nor does it predominate over his federal claims. Under such circumstances, this Court is justified in retaining its supplemental jurisdiction and ruling on the City's request for summary judgment on Plaintiff's negligence claim. *See, e.g., Allen v. GEO Group, Inc.*, slip op., No. 20-cv-00179-MEH (D. Colo. Sep. 11, 2020) (**Exhibit B** hereto), p. 17 (the court retains supplemental jurisdiction where (1) plaintiff's injuries were caused by the same incident, and his state and federal claims both derive from the alleged denial and delay in medical care; and (2) the "[p]laintiff's state law negligence claims do not raise novel or complex issues or substantially predominate over the federal claim."); *Dahn v. Adoption Alliance*, 164 F. Supp. 3d 1294, 1321 (D. Colo. 2016) (where the federal claims against one set of the defendants were dismissed, but such claims against other defendants remained, and the facts necessary to prove state law claims against one set of defendants would be largely identical to those necessary to prove claims against the other defendants, the court retained pendant jurisdiction over all the state law claims, as all of the claims "derive from a common nucleus of operative fact.").

3

the written policies of the McAlester Police Department and such violation constituted a breach of duty to Anson because, Plaintiff claims, it was foreseeable that Anson's death could result from such an "inherently dangerous" activity. Response (ECF Doc. 54), p. 3. All of Plaintiff's arguments presuppose that MPD Officer Sutterfield owed a duty of care to Anson, a fleeing suspect. Thus, Plaintiff argues that fact issues remain to be decided by a jury regarding whether (1) Officer Sutterfield followed McAlester Police Department pursuit policies and (2) Anson's death was a foreseeable result of the attempted traffic stop and subsequent pursuit. *Id.*, p. 3. But these questions are entirely irrelevant to the issue of the City's liability for negligence in this case for the simple reason that, under Oklahoma law, MPD Officer Sutterfield owed no duty of care to Anson once Anson fled from him. Under unequivocal Oklahoma law, **a police officer does not owe any duty of care to a fleeing suspect**. *See Smith v. City of Stillwater,* 2014 OK 42, ¶ 37. And this is true whether the officer's department has rules regarding pursuits or not. *Id.* at ¶¶ 35, 36.

The facts of *Smith* bear recitation, given their similarity to those of the present case: In *Smith,* the plaintiff's son, the decedent, was allegedly engaged in drag racing while operating a motorcycle. A police officer for the City of Stillwater attempted to stop the decedent. When the decedent failed to stop, several county and Stillwater law enforcement officers pursued him. At the end of the pursuit, the decedent drove his motorcycle into the edge of a "T" intersection, crashing into a creek where he struck a tree and was killed. *Smith,* 2014 OK 42, ¶ 1. The plaintiff, the decedent's father, filed a wrongful death action against the city, the county, and the State of Oklahoma, and like Plaintiff in this case, alleged that the defendants: (1) "maintained policies related to pursuits of individuals suspected of committing major and minor offenses"; and (2) the defendants' law enforcement officers "negligently failed to follow standard and acceptable policy practices." *Smith,* 2014 OK 42, ¶ 2.

The Oklahoma Supreme Court, addressing an issue of first impression, sought to answer the question: Do law enforcement officers engaged in vehicular pursuit owe a duty of care to the fleeing suspect? *Id.,* at ¶ 20. The Supreme Court unequivocally responded: No, they do not. *Id.*

4

The *Smith* court observed, "[b]y fleeing from law enforcement, it is the suspect [whose] unlawful and dangerous actions necessitate pursuit in the first place. It would be absurd to conclude that law enforcement officers, out of concern for the safety of a fleeing suspect, must cease pursuit of that individual or *risk possible civil liability to the suspect.*" *Id.* at ¶ 34 (emphasis added). And in examining a Tenth Circuit case applying Kansas law, *Smith* expressly rejected imposition of any duty on police officers to the fleeing suspect, *even if the police department had mandatory guidelines in place regarding vehicle pursuits*:

> [T]he Tenth Circuit Court of Appeals, applying Kansas substantive law, determined that specific, mandatory guidelines in a police department's policy governing vehicle pursuits created a special duty of care to a fleeing suspect. [citation omitted]. In this cause, the [Oklahoma] Court of Civil Appeals determined that the City's police department did not have similar mandatory guidelines, and so no duty of care was created. However, *the Court of Civil Appeals left open the possibility that were such guidelines in place, a duty of care might be created. We disagree.*
>
> * * *
>
> Oklahoma does not have an analogous precedent, and we decline to adopt the rule in *City of Overland Park*.

*Id.* at ¶¶ 35-36 (citing *Carl v. City of Overland Park, Kan.*, 65 F.3d 866 (10th Cir.1995)) (emphasis added).

The *Smith* court relied on the persuasive logic of an U.S. Supreme Court case involving an alleged violation of the Fourth Amendment. *Id.* at ¶ 33 (citing *Scott v. Harris,* 550 U.S. 372, 385-86 (2007)). Because the logic of the *Scott* decision, fully embraced by the Oklahoma Supreme Court in *Smith,* responds neatly and resolutely to Plaintiff's arguments in his Response, its salient points quoted by *Smith* bear repeating here:

> But wait, says respondent: Couldn't the innocent public equally have been protected, and the tragic accident entirely avoided, if the police had simply ceased their pursuit? We think the police need not have taken that chance and hoped for the best. Whereas [the officer's]

5

> action—ramming respondent off the road—was certain to eliminate the risk that respondent posed to the public, ceasing pursuit was not.
>
> * * *
>
> [W]e are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that they put other people's lives in danger. * * * The Constitution assuredly does not impose this invitation to impunity-earned-by-recklessness. Instead, we lay down a more sensible rule: A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death.

*Scott,* 550 U.S. at 385-86 (quoted by *Smith,* 2014 OK 42, ¶ 33).

Here, Plaintiff makes the same argument that the plaintiffs did in *Smith* and *Scott*: A police officer has a duty of care to a fleeing suspect, and the officer's failure to follow pursuit policies implemented by his department constitutes a breach of that duty, thereby subjecting the officer and his department to civil liability for damages when the suspect is injured or killed. It is this exact argument that was rejected by the Oklahoma Supreme Court in *Smith.* Accordingly, because under unambiguous Oklahoma law, MPD Officer Sutterfield owed no duty of care whatsoever to Anson, a fleeing suspect, Plaintiff's negligence claim fails as a matter of law.

### B.     Plaintiff Has Failed to Contradict the City's Arguments Regarding Causation

Even if Officer Sutterfield owed a duty to Anson—which Oklahoma law makes clear he does not—Plaintiff must also prove causation to establish liability for negligence under Oklahoma law. *See Defendant City of McAlester's Motion for Summary Judgment and Brief in Support* (ECF Doc. 48) ("Motion"), pp. 8-15. That is, to state a cognizable claim for relief as to his negligence cause of action, Plaintiff must allege specific facts that plausibly show that the City's alleged wrongful action was the "but for" proximate cause of the alleged injury. Here, Plaintiff initially based causation on his theory that the original action that put all the subsequent events into motion was MPD Officer

6

Sutterfield's attempt to "arrest" Anson.[2] Plaintiff has now modified that theory in his Response: Plaintiff claims that the facts of the OHP chase and shooting of Anson would not have occurred but for the initiation of a pursuit by the City's police officer. *See* Response (ECF Doc. 54), p. 2. As the City discusses at length in its Motion, the undisputed facts demonstrate that Plaintiff cannot establish a causal nexus between the City's complained-of action (an attempted "arrest" or the initiation of a pursuit) and the decision of the OHP troopers to shoot Anson, including proving foreseeability and a lack of unforeseen intervening causes. *See* Motion (ECF Doc. 48), pp. 7-15.

In his Response, Plaintiff does not attempt to address head-on the City's arguments regarding proximate cause. Rather, he attempts to attack the City's position on supervening cause, but he fails to cogently address that position. Plaintiff asserts that, as to the first element for supervening cause[3] (the ultimate causative act was independent of the original act), "The original act was the pursuit in violation of the policy of the City. A high-speed chase is inherently dangerous. The death of the Defendant could be foreseeable." Response (ECF Doc. 54), p. 3. This touches on foreseeability, the third element of the *Thompson* supervening cause test, not the first element. Clearly, Anson's shooting (actions of the OHP troopers, not Officer Sutterfield), which occurred after Anson failed to stop his vehicle despite numerous opportunities to do so, was an act entirely independent of the original act alleged by Plaintiff, i.e., the initiation of a pursuit by MPD Officer Sutterfield. Plaintiff makes no sincere attempt to address the second element for supervening cause, i.e., whether the initiation of the pursuit was adequate of itself to cause "the

---

[2] *See* Petition (ECF Doc. 2-1), ¶¶ 4-7, pp. 2-4; **Exhibit 9,** Plaintiff's Interrog. Answers, pp. 2-4.

[3] As discussed in the Motion, under Oklahoma law, there are three elements required to establish a supervening cause: "It must be (1) independent of the original act, (2) adequate of itself to bring about the result, and (3) one whose occurrence was not reasonably foreseeable." *Thompson v. Presbyterian Hosp., Inc.,* 1982 OK 87, ¶ 15.

result": Anson's death by gunfire due to his attempt to run into the OHP troopers with his vehicle. Clearly, MPD Officer Sutterfield's actions were *not* adequate of themselves to bring about such a result. At most, a foreseeable result of a vehicular pursuit would be a car crash of some sort. *See, e.g., Smith*, 2014 OK 42, ¶ 1. And other than his oft-repeated description of high-speed pursuits as "dangerous," Plaintiff offers no authorities stretching foreseeability beyond vehicle crashes to the illogical length he proposes, the shooting death of the flee suspect by officers of an entirely separate law enforcement agency.[4]

As the City discusses at length in the Motion, Plaintiff's allegations in the Petition utterly fail to illuminate the element of causation, and even if taken as true, they fail to establish tort liability against the City under Oklahoma law. Given the lack of foreseeability in this case, and with the existence of supervening causes that directly led to Anson's death, there simply is no evidence from which a jury could reasonably find a causal nexus between the act and the injury. Accordingly, the question of causation in this case is a question, not of fact, but of law for the Court to determine. The City is entitled to judgment as a matter of law on Plaintiff's Oklahoma tort claim.

### C.   Plaintiff Has Failed to Establish Any Breach of a Duty

As discussed above, under Oklahoma law, MPD Officer Sutterfield had no duty of care to Anson whatsoever, given that Anson was a fleeing suspect. But even if such a duty existed, no breach occurred. In his Complaint, Plaintiff initially hinged the City's negligence liability on the theory that the initial action that put all subsequent events into motion was MPD Officer Sutterfield's allegedly unlawful attempt to "arrest" Anson. *See* Complaint (ECF Doc. 2-1), ¶¶ 4-7, pp. 2-4. Plaintiff first asserted that the original attempted traffic stop, which Plaintiff erroneously

---

[4] None of the cases Plaintiff cites in his Response involve vehicular pursuits. While the Tenth Circuit in *U.S. v. Paetsch* mentions the possibility of dangerous high-speed pursuit, no such pursuit actually occurred in that case, and thus such a pursuit was not at issue. *See U.S. v. Paetsch*, 782 F.3d 1162, 1172 (10th Cir. 2015).

calls an "arrest," was wrongful solely because it was not authorized under Oklahoma law. *See id,* ¶ 4, p. 2. The City has fully addressed and negated that argument in its Motion. *See* Motion (ECF Doc. 48), pp. 15-17.[5] Plaintiff makes no attempt to address the City's position in his Response.

Plaintiff has now shifted course from the allegations in his Complaint and in his Response pins his negligence claim on the theory that MPD Officer Sutterfield's pursuit of Anson violated the written policies of the McAlester Police Department. *See* Response (ECF Doc. 54), pp. 2-3. Plaintiff asserts that the pursuit was a breach of duty to Anson because it was foreseeable that Anson's death could result from such an "inherently dangerous" activity. *Id.*, p. 3. Plaintiff bases his breach-of-duty argument on the following: (1) MPD Officer Sutterfield's decision to pursue Anson in the evening in a "busy area" was "obviously erroneous" because the dangers supposedly outweighed the need to apprehend Anson; and (2) "the City officers had the identity information of the subject, i.e., the license tag and the owner of the vehicle."

First, as discussed in the Motion, no reasonable fact-finder could find that MPD Officer Sutterfield, at the initiation of the pursuit, should have known that the driver of the suspect vehicle would (1) attempt to evade the traffic stop in the first place; (2) engage in a highly dangerous high-speed chase to evade detention for the minor crime of shoplifting; and perhaps most importantly, (3) continue his attempts to evade detention to the point of ramming his vehicle into those of pursuing law enforcement officers, then present a deadly threat to those officers by driving forward toward them. *See* Motion (ECF Doc. 48), p. 14. Thus, because the reasonably perceived "danger" at the initiation of the pursuit was minimal given the minor nature of the alleged crime, MPD Officer Sutterfield's pursuit was fully within MPD policy.

---

[5] As discussed in the Motion, Officer Sutterfield did not arrest or attempt to arrest Anson; rather, he attempted to make a traffic stop, which is not the equivalent of an arrest. Moreover, under Oklahoma law, MPD Officer Sutterfield was justified in attempting to stop Anson for an investigatory detention. And Anson had a legal duty under Oklahoma law to submit to such detention.

Second, as stated in MPD Officer Sutterfield's report of the incident, at the beginning of the pursuit, the MPD had no knowledge of the identity of the suspect driving the subject vehicle, and Plaintiff's claim otherwise is false. MPD only knew the tag number of the vehicle and that the vehicle was owned by "Interstate Wholesale" in McAlester—hardly a meaningful identifier. MPD Officer Sutterfield identified the suspect as Anson only after the pursuit had been initiated, and only after Anson had already engaged in numerous dangerous and life-threatening actions. *See* MPD Officer Sutterfield's report, Exhibit B to Response (ECF Doc. 54-2), p. 1-2. Thus, a subsequent arrest of a known suspect was not possible at the beginning of the pursuit. Continued pursuit after identification, and after Anson had already engaged in numerous life-threatening actions, was absolutely required to eliminate the risk that Anson posed to the public. *See Scott*, 550 U.S. at 385 ("Whereas [the officer's] action—ramming respondent off the road—was certain to eliminate the risk that respondent posed to the public, ceasing pursuit was not.").

## IV.   Conclusion

WHEREFORE, premises considered, Defendant, City of McAlester, respectfully requests, pursuant to Fed. R. Civ. P. 56, that the Court grant judgment in its favor as a matter of law on each of Plaintiff's causes of action against the City, for the reasons explained in both its Motion and herein.

        Respectfully submitted,

        STEIDLEY & NEAL, P.L.L.C.
        *Attorneys for Defendan City of*
        *McAlester, Oklahoma*

        By: *s/Sean M. McKelvey*
            Sean M. McKelvey, OBA #17098
            smm@steidley-neal.com
            Meaghen E. Clark, OBA #32830
            mac@steidley-neal.com
            P.O. Box 1165
            McAlester, OK 74502
            (918) 423-4611
            (918) 423-4620 - fax

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of January, 2023, I electronically transmitted the above and foregoing document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

>Gary J. James, OBA #12718
>gary@garyjameslaw.com
>*Attorney for Defendants Gray & McKee, individually*
>
>Kevin McClure, OBA #12767
>kevin.mcclure@oag.ok.gov
>*Attorney for Defendants Gray, McKee & OHP*
>
>Warren Gotcher
>Warren@gotcher-beaver.com
>*Attorney for Plaintiff*

>/s/ *Sean M. McKelvey*